UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO BORUNDA,[1]<br><br>    Petitioner,<br><br>    v.<br><br>MARION SPEARMAN, Warden,<br><br>    Respondent. | NO. CV 14-5850-BRO (AGR)<br><br>ORDER TO SHOW CAUSE |

On July 28, 2014, Petitioner filed a Petition for Habeas Corpus pursuant to 28 U.S.C. § 2254. For the reasons discussed below, it appears that the one-year statute of limitations has expired.

The court, therefore, orders Petitioner to show cause, on or before ***September 8, 2014***, why this court should not recommend dismissal of the petition with prejudice based on expiration of the one-year statute of limitations.

---

[1] Petitioner is also known as Ignacio Gonzalez. (Petition at 1.)


**I.**

**PROCEDURAL BACKGROUND**

On February 2, 2007, Petitioner pled no contest to residential burglary. (Petition at 2.) Petitioner was sentenced to 22 years in prison. (*Id.*) He did not appeal. On the petition form, Petitioner states he appealed. However, the case he cites is a habeas petition that he filed on March 3, 2014 before the California Court of Appeal and that was denied on March 5, 2014. *See* Appellate Courts Case Information online docket in Case No. B254653. On April 10, 2007, the Superior Court denied Petitioner's request for a certificate of probable cause. (Petition, Attachment 2.)

On October 2, 2007, Petitioner filed a habeas petition in the Superior Court, which was denied on November 6, 2007. (*Id.*, Attachment 4.) On August 31, 2010, the Superior Court denied another habeas petition filed by Petitioner on August 16, 2010. (*Id.*, Attachment 11.)

On February 11, 2008, Petitioner filed a habeas petition in the Court of Appeal, which was denied on February 14, 2008. Appellate Courts Case Information online docket in Case No. B205636.

On September 7, 2012, the Superior Court denied a writ of error coram nobis filed by Petitioner on August 9, 2012. (*Id.*, Attachment 14.) On October 12, 2012, the Court of Appeal received a notice of appeal from Petitioner. On January 11, 2012, the court dismissed the request as a "non-appealable order." Appellate Courts Case Information online docket in Case No. B244470. On December 4, 2012, Petitioner filed a writ of error coram vobis in the Court of Appeal, which was denied on December 5, 2012. Appellate Courts Case Information online docket in Case No. B245404.

On January 28, 2014, the Superior Court denied Petitioner's third habeas petition filed on December 11, 2013. (Petition, Attachment 17.)

On April 1, 2014, Petitioner filed a habeas petition in the California Supreme Court, which was denied on June 18, 2014. Appellate Courts Case Information online docket in Case No. S217532.

On July 23, 2014, Petitioner constructively filed the instant petition in this court in which he raises three grounds. (Petition at 5-6; back of envelope)

## II.

## STATUTE OF LIMITATIONS

The petition was filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Therefore, the court applies the AEDPA in reviewing the petition. *Lindh v. Murphy*, 521 U.S. 320, 336, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997).

The AEDPA contains a one-year statute of limitations for a petition for writ of habeas corpus filed in federal court by a person in custody pursuant to a judgment of a state court. 28 U.S.C. § 2244(d)(1). The one-year period starts running on the latest of either the date when a conviction becomes final under 28 U.S.C. § 2244(d)(1)(A) or on a date set in § 2244(d)(1)(B)-(D).

### A.    The Date on Which Conviction Became Final – § 2244(d)(1)(A)

Because Petitioner did not appeal, his conviction became final 60 days after his conviction (February 2, 2007) on April 3, 2007. California Rules of Court 8.308(a) (formerly Rule 30.1). The statute of limitations expired a year later on April 3, 2008. Absent tolling, the petition is time-barred.

### 1.    Statutory Tolling

The statute of limitations is tolled during the time "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).

The court assumes for the purpose of this order that all of Petitioner's collateral filings were "properly filed" and pertained to the judgment or claim.

3

Petitioner's first habeas petition was filed in the Superior Court on October 2, 2007, 182 days after his conviction became final and leaving him with 183 days in the limitations period. The habeas petition was denied on November 6, 2007. In addition, on February 11, 2008, Petitioner filed a habeas petition in the Court of Appeal, which was denied on February 14, 2008. Petitioner is entitled to statutory tolling for the entire period from October 2, 2007 to February 14, 2008.[2]

Petitioner did not file another habeas petition until August 16, 2010, when he filed a second petition in the Superior Court. The gap between February 14, 2008, when the Court of Appeal denied his petition and this next filing (914 days) is unreasonable. *Evans v. Chavis*, 546 U.S. 189, 193, 126 S. Ct. 846, 163 L. Ed. 2d 684 (2006); *Carey v. Saffold*, 536 U.S. 214, 224, 122 S. Ct. 2134, 153 L. Ed. 2d 260 (2002); *see Gaston v. Palmer,* 447 F.3d 1165, 1167 (9th Cir. 2006) (gaps of 15 months, 18 months and 10 months between rounds of state habeas petitions are unreasonable). Petitioner is not entitled to statutory tolling for the 914-day gap. The limitations period therefore expired on August 15, 2008 (February 14, 2008 + 183 days).

Petitioner is not entitled to statutory tolling for his subsequent collateral filings. *See Welch v. Carey*, 350 F.3d 1079, 1081-84 (9th Cir. 2003) (state habeas petition filed after the limitations has expired does not revive the expired limitations period).

### 2. Equitable Tolling

"[T]he timeliness provision in the federal habeas corpus statute is subject to equitable tolling." *Holland v. Florida,* 130 S. Ct. 2549, 2554, 177 L. Ed. 2d 130 (2010). "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 2562 (quoting

---

[2] The court assumes that the gap between the two filings is reasonable for the purpose of this order.

4

*Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005)). "The diligence required for equitable tolling purposes is "reasonable diligence," not "maximum feasible diligence." *Id.* at 2565 (citations and quotation marks omitted). The extraordinary circumstances must have been the cause of an untimely filing. *Pace*, 544 U.S. at 418. "[E]quitable tolling is available for this reason only when '"extraordinary circumstances beyond a prisoner's control make it *impossible* to file a petition on time"' and '"the extraordinary circumstances" were the *cause* of [the prisoner's] untimeliness.'" *Bills v. Clark*, 628 F.3d 1092, 1097 (9th Cir. 2010) (citations omitted, emphasis in original).

Petitioner argues he was unable to file earlier because he had to obtain his court transcripts or his court file from his trial counsel but was unable to do so. (Petition at 1.1 to 1.2.) Assuming without deciding that Petitioner is entitled to equitable tolling until he received his case file from counsel, the petition remains time-barred. Petitioner received his file from counsel in a letter dated October 19, 2010. (*Id.* at 1.3 & Attachment 13.) Yet, he did not file another request for collateral review in California until August 9, 2012, almost two years later, when he filed a writ of error coram nobis. Equitable tolling does not assist Petitioner.

**B.    Date of Discovery – 28 U.S.C. § 2244(d)(1)(D)**

In the context of an ineffective assistance claim, the statute of limitations may start to run on the date a petitioner discovered (or could have discovered) the factual predicate for a claim that his counsel's performance was deficient, or on the date a petitioner discovered (or could have discovered) the factual predicate for prejudice, whichever is later. *See Hasan v. Galaza*, 254 F.3d 1150, 1155 (9th Cir. 2001). Therefore, the statute of limitations begins to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). The statute starts to run when the petitioner knows or through

1 diligence could discover the important facts, not when the petitioner recognizes
2 their legal significance. *Hasan*, 254 F.3d at 1154 n.3.

3 Petitioner alleges his trial counsel was ineffective based on his conduct
4 during plea negotiations.

5 Petitioner was aware of the factual predicates of his claim of ineffective
6 assistance of trial counsel by the time he pled guilty. Even if the court assumes
7 Petitioner was unaware of the alleged "bribe" of a witness until as late as 2008
8 (*see* Petition, Attachment 6), the date of discovery does not assist Petitioner.

9     **C.**     **Actual Innocence**

10 "[A]ctual innocence, if proved, serves as a gateway through which a
11 petitioner may pass . . . the impediment . . . of the statute of limitations."
12 *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928, 185 L. Ed. 2d 1019 (2013).
13 "[T]enable actual-innocence gateway pleas are rare: '[A] petitioner does not meet
14 the threshold requirement unless he persuades the district court that, in light of
15 the new evidence, no juror, acting reasonably, would have voted to find him guilty
16 beyond a reasonable doubt." *Id.* (quoting *Schlup v. Delo,* 513 U.S. 298, 329, 115
17 S. Ct. 851, 130 L. Ed. 2d 808 (1995) and citing *House v. Bell*, 547 U.S. 518, 538,
18 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006) (emphasizing that the *Schlup* standard is
19 'demanding' and seldom met)).

20 To satisfy the standard, a petitioner must present "'new reliable evidence.'"
21 *House*, 547 U.S. at 537. Based on all the evidence, both old and new, "the court
22 must make 'a probabilistic determination about what reasonable, properly
23 instructed jurors would do.'" *Id.* at 538 (citation omitted). "The court's function is
24 not to make an independent factual determination about what likely occurred, but
25 rather to assess the likely impact of the evidence on reasonable jurors." *Id.*

26 Petitioner challenges the old evidence and argues there is new evidence of
27 a "bribe of [a] witness." (Petition at 3.2 & Attachment 17.)

28

6

1         The court has reviewed the transcript of the preliminary hearing.  (Petition, Attachment 16.)  Susanna Koost, the victim of the burglary, testified first.  On August 23, 2006, just before noon, Koost arrived home to her townhouse apartment on Tica Drive.  She entered her home through the back door and noticed open drawers in her dining room.  She also saw someone in her living room "ransacking the armoire."  She said, "'Who's here?  Get out of here.'"  She ran out the back door, and the intruder ran out the front door.  (*Id.* at 3.)  She was not able to get a good look at the intruder's face.  However, she noticed he had a hat and a blue and white shirt on.  She went back into her house and called 911.  (*Id.* at 4.)  She also noticed that some of her jewelry had been stolen.  (*Id.* at 5.)  She then ran back out the front door yelling, "'That man just robbed me.'"  (*Id.* at 4.)  She saw her neighbor, Adam Lassy, who was just coming home when she screamed about the "robbery."  (*Id.* at 4-5.)  She also noticed that the intruder was running toward the corner of her street, Tica Drive, and Los Feliz Boulevard.  (*Id.* at 5.)  When he arrived at the corner, he turned left onto Los Feliz Boulevard and his hat flew off.  She also noticed that Lassy was chasing the intruder.  (*Id.* at 9.)  Petitioner then "hopped on a bicycle."  (*Id.* at 10.)

        About 20 minutes after she lost sight of the intruder, the police took Koost to another location where they had arrested Petitioner.  The police had taken a knife and a ring from Petitioner's pocket, and they showed them to Koost.  Koost recognized the ring as one she had purchased the week before.  (*Id.* at 6-7, 10.)

        Lassy testified that when he arrived home, he noticed a man with a white plastic bag running from Koost's apartment.  He heard Koost scream that she had been robbed.  (*Id.* at 12-13.)  The man had a hat on and was wearing a blue or blue-striped shirt.  Lassy did not "get a great look at his face."  Lassy started "after him."  The man turned the corner at Los Feliz Boulevard and got on a bike that was "propped up against an apartment building" and biked east on Los Feliz Boulevard on the wrong side of the road.  Lassy stopped following the man when

7

he arrived at about Griffith Park Boulevard. (*Id.* at 13.) Lassy thought that he saw the hat fly off the man while he was cycling. (*Id.* at 14.) The man had his shirt on while he was cycling. (*Id.* at 17.)

Lucia Floridalma Lopez testified through a Spanish interpreter. (*Id.* at 19.) Lopez was a passenger in a car driving on Los Feliz Boulevard shortly after the time of the burglary. (*Id.* at 19-20.) She witnessed Lassy running and Petitioner on a bicycle. (*Id.* at 20, 22.) She saw Petitioner get off his bicycle, pick it up, and go up some stairs. (*Id.* at 21.) She was able to see Petitioner's face and identified him in court. (*Id.* at 21-22.) Petitioner was not wearing a hat but was wearing a blue and white striped shirt. (*Id.* at 22.) Lopez did not speak to any other witnesses because "I cannot communicate with them." (*Id.*) The police took Lopez to another location. Petitioner at that point did not have a shirt on. She identified Petitioner as the man she had seen on the bicycle. (*Id.* at 23-24.)

Detective Ronald Kitzmiller of the Los Angeles Police Department investigated the burglary. (*Id.* at 25.) He searched Petitioner right after the crime and found a white metal ring with a brown stone in Petitioner's pocket. (*Id.* at 26.) Petitioner told Kitzmiller he had found the ring "a few blocks away." (*Id.* at 27.)

The court found probable cause that Petitioner had committed first-degree burglary and remanded him to custody. (*Id.* at 28.)

Petitioner submits his declaration in support of his claim of actual innocence. He states that on August 23, 2006, he was in a car with two others "looking to buy drugs." They stopped so Petitioner could make a phone call because they were "lost." Before Petitioner exited the car, he took off his shirt because it was hot. The other two drove off and left him there.

Petitioner walked to the intersection of Silver Lake Boulevard and Madera Avenue.[3] There he found a white metal ring with a stone and put it in his pocket.

---

[3] Petitioner incorrectly names the two streets.

8

1  He then walked to Silver Lake Boulevard and Glenhurst Avenue (not Glenhurst
2  Street). The police pulled up and arrested him. Officer Henderson (Kitzmiller's
3  partner) told Petitioner that he "had better tell him where I had hidden the 'things'
4  I had stolen because I was 'bought and paid for.'" Petitioner's counsel told
5  Petitioner at the courthouse on February 2, 2007, that Koost had given Lopez a
6  reward of $300-500 as an eyewitness. (Petition, Attachment 17.)

Petitioner has not demonstrated actual innocence of burglary. His claim rests on his own version of what occurred coupled with an accusation that Koost "bribed" Lopez to falsely identify him. (*Id.*) There is no evidence of the money being a bribe. According to defense counsel, when he was informed on July 17, 2008, that Petitioner was alleging that counsel was ineffective, he wrote a memo to his file about his recollection of the reward. Counsel stated that the district attorney told counsel before the plea that Koost had given Lopez a reward of between $100 and $500 "for the recovery of her ring." Counsel told Petitioner that this information could be used at trial to "spin . . . to our advantage." (Petition, Attachment 6.)

The evidence given at the preliminary hearing was compelling as to Petitioner's guilt. Petitioner has failed to "persuade[] the . . . court that, in light of the [allegedly] new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin*, 133 S. Ct. at 1928.

### III.
### ORDER TO SHOW CAUSE

IT IS THEREFORE ORDERED that, on or before **September 8, 2014**, Petitioner shall show cause why the court should not recommend dismissal of the petition based on expiration of the one-year statute of limitations.

**If Petitioner fails to respond to the order to show cause by the above deadline, the court will recommend that the petition be dismissed with prejudice based on expiration of the one-year statute of limitations.**

DATED: August 7, 2014

ALICIA G. ROSENBERG
United States Magistrate Judge